**MID–PENN NATIONAL MORTGAGE COMPANY, a Delaware corporation, Plaintiff,**

v.

**Randolph HUGHES, State Banking Commissioner, Defendant.**

Superior Court of Delaware.

New Castle.

Oct. 10, 1969.

**292**

Howard M. Berg and Brian P. Murphy, Wilmington, for plaintiff.

Gerald C. Foulk, Deputy Atty. Gen., Wilmington, for State Banking Commissioner.

STIFTEL, President Judge.

■ Mid-Penn National Mortgage Company is a Delaware corporation but none of its stockholders are Delawareans. Mid-Penn wants to get into the secondary mortgage loan business in Delaware. The State Banking Commissioner says it cannot because it does not comply with Section 3103 of Title 5, Delaware Code. Mid-Penn says that the portion of § 3103 which pertains to corporate applicants is in violation of Article I, § 7, of the Constitution of Delaware, Del.C.Ann.

Section 3103 is part of Chapter 31, enacted in 1966, entitled the "Secondary Mortgage Loan Act".[1] The Act was passed to correct abuses in the second mortgage business. It is almost an exact copy of the New Jersey law,[2] N.J.S.A. 17:11A–1 through 25, enacted one year earlier.

The Delaware Act consists of thirty-one separately numbered sections. There are detailed provisions concerning procedure on application for licenses and renewals (§ 3104) including an annual fee of $25 (§ 3108) and the filing of a surety bond with the Banking Commission of $5000 (§ 3109). The license must show location of the office or branch where the business is to be conducted (§ 3107). The license cannot be transferred and no other name may be used. There are provisions for hearings on refusal, suspension or revocation of license (§ 3111). The Banking Commissioner may investigate, examine account books and records (§ 3114) which shall be maintained at the place of business of the licensee in this State (§ 3117). Section 3121 sets forth a mathematical formula for ascertaining the gross dollar amount of interest which the lender may deduct in advance and the Commissioner may prepare a schedule of maximum service charges which may be paid by an applicant. There are many other provisions to protect the borrower which are set out in the Act.

Mid-Penn attacks only the second sentence of § 3103, which sets forth the qualifications of a corporate licensee. This section says:

"§ 3103. Qualifications of licensee.

"Every applicant for a license under this chapter shall have been a bona fide resident of this State for a period of at least 2 years prior to the date of filing the application for such license. *In the case of a corporate applicant, the holder or holders of at least 50% of the stock of such corporation shall have resided in this State for a period of at least 2 years prior to the date of filing the application.* Added 55 Del.Laws, Ch. 346, § 1." (Emphasis supplied.)

Under its police power, the State has the right to protect its citizens, their health, comfort, property, and their welfare. Gallegher v. Davis and Law, Superior Court, 7 W.W.Harr. 380, 183 A. 620, 625; Van Winkle v. State, 4 Boyce, 578, 91 A. 385. It includes the right to regulate businesses for the public benefit. State v. Danberg, 1 Terry 136, 6 A.2d 596, 599. However, there are limitations on the exercise of this power by the State. The legitimacy of its

---

1. The Act says a "secondary mortgage loan" means (1) a loan not to be repaid in 90 days or less which is secured, in whole or in part, by a mortgage upon any interest in real property used as a dwelling with accommodations for not more than four families which property is subject to the lien of one or more prior mortgages, or (2) the purchase of any interest in an existing mortgage made to secure such a loan.

2. The legislative background of the New Jersey law is set forth in Oxford Consumer Discount Company of North Philadelphia v. Stefanelli, 102 N.J.Super. 549, 246 A.2d 460, at p. 462, 463.

use depends upon "whether the situation presents a reasonable necessity for the imposition of restraint in order to promote its cause and whether the means adopted bear reasonable relation to the end sought to be accomplished." Mayor and Council of Wilmington v. Turk, 14 Del.Ch. 392, 129 A. 512, 516.

Section 3103 makes it necessary that the holders of 50% of the stock of the corporate applicant shall have been residents of the State of Delaware for two years prior to the filing of the application. It is not explained how the place of residence of a shareholder has any effect on the conduct of the business of the applicant corporation. This Act does not require applicants to be domestic corporations; it does not require their officers and managers to be Delawareans. Once a corporation is licensed, all the stockholders can leave the State and still come within the law. If the applicant is a listed public corporation, with the shares divided among many stockholders, it would be difficult to effect compliance with this provision. Whatever may have been the reason for the enactment of the limitation in § 3103, it cannot be found in an attempt to curb fraud upon the public since no reasonable relation to prevention of fraud and the ownership of stock before filing exists. See State v. Hobson, 7 Terry 381, 83 A.2d 846, 858. In the exercise of its police powers, Delaware cannot pass laws which are arbitrary and have no relation to the "disease" it attempts to cure. See Hoff v. State, 9 W.W. Harr. 134, 197 A. 75, 84. The conduct of the secondary mortgage business was a disease rampant in the community. Most of the Act helps to cure this evil. Residence requirements for stockholders do not.

Since the stockholder residence requirement is unrelated to the purpose of the Secondary Mortgage Act, it is void as an unconstitutional exercise of the police power of the State in violation of Article I, Section 7, of our State Constitution. The same conclusion was reached on September 11, 1968, by the Superior Court of New Jersey in Oxford Consumer Discount Co. of North Philadelphia v. Stefanelli, 102 N.J.Super. 549, 246 A. 460. See, also, Miskell v. Termplan, Inc. of Houston, 381 S.W.2d 129 (Tex.Civ.App.1964). The New Jersey Court said this section violated due process and equal protection. This is significant since our language was drawn from the New Jersey Act. Opinion of the Justices, 4 Storey 524, 181 A.2d 215, 217–218; Stauffer v. Standard Brands, Inc., 40 Del.Ch. 202, 178 A.2d 311, 315.

■ The Secondary Mortgage Act survives the excision of this provision. It is severable. See Title 1, Del.Code, § 308. The provisions of the Act that remain continue to provide close regulation of the operations of the secondary mortgage loan industry in Delaware. All of the statutory policing regulation provisions of loan contracts are left operative and intact notwithstanding invalidation of the shareholder residence requirement of § 3103.

The application of the plaintiff shall not be barred solely because of the non-residence of more than 50% of the shareholders for the last two years.

It is so ordered.